1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DANE R. GILLETTE
    Chief Assistant Attorney General
3   GERALD A. ENGLER
    Senior Assistant Attorney General
4   GREGORY A. OTT
    Deputy Attorney General
5   SARA TURNER, State Bar No. 158096
    Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5712
     Fax:  (415) 703-1234
8    Email:  sara.turner@doj.ca.gov

9   Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13
    BEASLEY WILLS,                          C 07-06003 TEH (PR)
14
                             Petitioner,
15
            v.
16
    D. K. SISTO, Warden,
17
                             Respondent.
18

19

20      MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2

**Page**

3  STATEMENT OF THE CASE                                                                1

4  STATEMENT OF FACTS                                                                   2

5  STANDARD OF REVIEW                                                                   3

6  ARGUMENT                                                                             3

7      I.    **THE CALIFORNIA STATE COURT PROPERLY REJECTED**
   **PETITIONER'S DUE PROCESS CLAIM BASED ON**
8  **EXCLUSION OF EXPERT WITNESS TESTIMONY**                                            3

9          A.  State Court Proceeding                            3

10         B.  The State Court's Finding Was Not Unreasonable   5

11     II.   **THE STATE COURT REASONABLY DETERMINED THAT**
   **PETITIONER WAS NOT PREJUDICED BY THE ADMISSION**
12 **OF OFFICER JADALLAH'S LAY OPINION TESTIMONY**                                      7

13         A.  State Court Proceedings                          7

14         B.  The Claim Is Procedurally Defaulted; However, Even If Cognizable, The
   State Court's Decision Was Neither Contrary To, Nor Involved, An
15 Unreasonable Application Of Clearly Established United States Supreme
   Court Authority                                                                     10

16

17    III.  **THERE WAS NO CUMULATIVE PREJUDICIAL ERROR**                    13

18 CONCLUSION                                                                           14

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bell v. Cone*
535 U.S. 685 (2002) ..... 12

*Coleman v. Thompson*
501 U.S. 722 (1991) ..... 10, 11

*Cooey v. Anderson*
988 F. Supp. 1066 (N.D. Ohio 1997) ..... 13

*Davis v. Woodford*
384 F.3d 628 (9th Cir. 2004) ..... 11

*Derden v. McNeel*
978 F.2d 1453 (5th Cir. 1992) ..... 13

*Hamilton v. Vasquez*
17 F.3d 1149 (9th Cir. 1994) ..... 13

*Jackson v. Giurbino*
364 F.3d 1002 (9th Cir. 2004) ..... 11

*Jordan v. Ducharme*
983 F.2d 933 (9th Cir. 1993) ..... 5

*Lockyer v. Andrade*
538 U.S. 63 (2003) ..... 3

*People v. McDonald*
37 Cal.3d 351 (1984) ..... 4

*Rich v. Calderon*
187 F.3d 1064 (9th Cir. 1999) ..... 11

*Rupe v. Wood*
93 F.3d 1434 (9th Cir. 1996) ..... 13

*Strickland v. Washington*
466 U.S. 668 (1984) ..... 12

*United States v. Brewer*
783 F.2d 841 (9th Cir. 1986) ..... 5

*United States v. George*
975 F.2d 1431 (9th Cir. 1992) ..... 5

*Villafuerte v. Stewart*
111 F.3d 616 (9th Cir. 1997) ..... 13

**TABLE OF AUTHORITIES (continued)**

**Page**

*Williams v. Calderon*
52 F.3d 1465 (9th Cir. 1995)                                                    12

*Woodford v. Visciotti*
537 U.S. 19 (2002)                                                          3, 13

*Yarborough v. Gentry*
540 U.S. 1 (2003)                                                              12


**Statutes**

Antiterrorism and Effective Death Penalty Act of 1996                          3

California Evidence Code
        § 800                                                                    9
        § 1101                                                                  10
        § 1101(a)                                                               12
        § 1101(b)                                                               12

United States Code, Title 28
        § 2254                                                               2, 12
        § 2254(d)(1)                                                             3
        § 2254(d)(2)                                                             7

**Court Rules**

Rule 5 of the Rules Governing Section 2254 Cases                               2

**Other Authorities**

California Jury Instructions, Criminal
        No. 2.92                                                              4, 6
        No. 2.81                                                                 9

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  GREGORY A. OTT
   Deputy Attorney General
5  SARA TURNER, State Bar No. 158096
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5712
    Fax:  (415) 703-1234
8   Email:  sara.turner@doj.ca.gov

9  Attorneys for Respondent

10            IN THE UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13

14 | **BEASLEY WILLS,** | C 07-06003 TEH (PR) |

15                                Petitioner,    **MEMORANDUM OF POINTS
                                                AND AUTHORITIES IN
16                                              SUPPORT OF ANSWER**

          v.

17 **D. K. SISTO, Warden,**

18                                Respondent.

19

20                     **STATEMENT OF THE CASE**

21           On April 26, 2005, an Alameda County jury convicted petitioner of two counts of robbery

22 and possession of a firearm by a felon.  The jury also found true the allegation that petitioner used

23 a firearm in the commission of the offenses.  Ex. 1, Clerk's Transcript ("CT") 336-37, 339-43.

24 Petitioner admitted that he had served a prior prison term.  CT 114.  On October 13, 2005, petitioner

25 was sentenced to thirteen years in state prison.  CT 175-78.

26 ///

27 ///

28 ///

MPA In Support Of Answer - *Wills v. Sisto* - C 07-06003 TEH (PR)

1    On March 20, 2007, the California Court of Appeal affirmed the judgment of conviction.

2   Ex. 6, attached Ex. A.[1/]  On June 20, 2007, the California Supreme Court denied review.  Exhs. 6,

3   7.

4    On November 28, 2007, petitioner filed the instant federal habeas corpus petitioner under

5   28 U.S.C. § 2254, raising the following issues: 1) the trial court erred in excluding the testimony of

6   an expert witness regarding factors affecting eyewitness testimony in violation of due process; 2)

7   the trial court erred in admitting opinion testimony regarding the propensity of drug users to commit

8   robberies, which prejudiced petitioner and requires reversal; and 3) the cumulative impact of the

9   errors required reversal.  Petition at 6.

10   On March 27, 2008, this Court issued an Order to Show Cause, directing respondent to

11   answer pursuant to Rule 5 of the Rules Governing Section 2254 Cases.

12                              **STATEMENT OF FACTS**

13   The California Court of Appeal summarized the facts of the offenses as follows:

14   At around 7:50 p.m. on February 3, 2005, an armed robber entered the Beacon gas
     station at Foothill and Havenscourt Boulevards in East Oakland.  Two employees of the
15   gas station, Vijay Behl and Lucio Garcia, were on duty at the time.  Garcia was behind the
     cash register, Behl was standing on the customer side of the counter speaking on his cell
16   phone.  No other customers or employees were present.

17   The robber approached the counter and drew a large revolver from his waistband. He
     aimed the revolver at Behl's chest, threatened to kill him, and demanded money.  Garcia
18   produced some money from the cash register and placed it on the counter.  The robber
     repeated his demand for money and continued throughout to threaten Behl.  Garcia
19   removed the cash tray from the register and placed it on the counter.  The robber filled his
     pockets with all the cash from the tray, backed out of the gas station and fled.  The gas
20   station lost $400-$500 in the robbery.

21   After the robber left, Garcia and Behl summoned Oakland Police by activating the
     gas station's security alarm.  Behl also described the robbery and the suspect to a 911
22   operator.  Four security cameras recorded the crime but the poor quality of the tape
     precluded any meaningful depiction of the perpetrator.   The robber also concealed
23   himself from the cameras by his clothing and by walking backwards out of the gas station.

24   On March 3, 2005, appellant's step-brother, Eric Delk, told police appellant robbed
     the Beacon gas station on February 3. Delk was in custody on vehicle theft charges at the
25   time, and appellant was also in custody on an unrelated charge.  The investigating officers
     arranged an identification lineup to corroborate Delk's information with the two
26   eyewitnesses.

27   _____

28    1.  The California Court of Appeal opinion is attached to the Petition for Review as Ex. A.

1    Behl and Garcia attended a lineup on March 9, at the Oakland police station. The
2    lineup included appellant and five "fillers" chosen by appellant from fellow inmates in
     accordance with standard lineup procedures. At the lineup appellant and the fillers each
3    donned a black knit beanie, stepped forward and said: "Give me the money." After the
     lineup, Behl unequivocally identified appellant as the robber. Garcia tentatively identified
4    appellant, but indicated his uncertainty by marking his lineup card with a question mark.
     On March 25, 2005, police formally charged appellant with robbing the Beacon gas
5    station.

6                              **STANDARD OF REVIEW**

7          This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

8    (AEDPA), which imposes a "highly deferential" standard for evaluating state court rulings and

9    "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537

10   U.S. 19, 24 (2002) (per curiam). Under AEDPA, the federal court has no authority to grant habeas

11   relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,"

12   clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A decision constitutes an

13   unreasonable application of Supreme Court law only if the state court's application of law to the

14   facts is not merely erroneous, but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 75

15   (2003). The petitioner bears the burden of showing that the state court's decision was unreasonable.

16   *Visciotti*, 537 U.S. at 25.

17                                 **ARGUMENT**

18                                      **I.**

19   **THE   CALIFORNIA   STATE   COURT   PROPERLY   REJECTED**
     **PETITIONER'S DUE PROCESS CLAIM BASED ON EXCLUSION OF**
20   **EXPERT WITNESS TESTIMONY**

21         In ground one, petitioner claims that the trial court erred in exclusion of an expert witness

22   on due process grounds. Petition at 6. Ground one should be rejected because the California court

23   did not unreasonably apply controlling federal law in denying the claim.

24   **A.   State Court Proceeding**

25         Prior to petitioner being identified as a robbery suspect in this case, Eric Delk, petitioner's

26   stepbrother, gave a statement to police officers informing them that it was petitioner who committed

27   the robbery at the Beacon Gas Station. RT 188–89, 241–46. Once Delk's statement was received,

28   Officer Jadallah, the robbery investigator, coordinated a lineup to be viewed by the eyewitnesses,

MPA In Support Of Answer - *Wills v. Sisto* - C 07-06003 TEH (PR)
                                  3

1  which involved petitioner and five other "fillers" of petitioner's choosing.  RT 241–44.  From the

2  lineup, Behl immediately and positively identified petitioner as the person who had committed the

3  robbery at the gas station.  RT 25, 64.  The second witness, Garcia, placed a question mark over

4  petitioner's number, and admitted that, although he knew immediately that it was petitioner who

5  committed the robbery, he was apprehensive and fearful about being further involved in the trial of

6  this case.  RT 134.  At trial, Behl and Garcia both testified that they were certain that petitioner was

7  the person who committed the robbery on February 3, 2005.  RT 49, 69, 104, 115–16, 146.

8         To discredit the identifications, petitioner sought to introduce eyewitness expert testimony

9  of Dr. Robert Shomer at trial and argued that the facts present a possible case of mistaken

10 identification and the expert would have discussed the factors of CALJIC No. 2.92 in light of this

11 case.  Ex. 4 at 16–17.  The trial court, relying on the California Supreme Court's holding in *People*

12 *v. McDonald,* 37 Cal.3d 351 (1984), denied the request as unnecessary on the ground that the

13 evidence as a whole, including Erik Delk's testimony, substantially corroborated the identifications.

14 CT 96–98.

15        The California Court of Appeal rejected petitioner's claim that the trial court's exclusion

16 of his expert witnesses testimony deprived him of his constitutional right to due process:

17     In contrast to the contradictory and uncertain testimony from multiple eyewitnesses seen
   in *McDonald*, the eyewitness testimony from the two victims here was focused, consistent
18 and assured.  Both witnesses observed the robber in close proximity and in a well-lit
   environment.  Both observed their assailant for at least 30 seconds.  Both positively
19 identified appellant at the police line up, the preliminary hearing and at trial.  The only
   flaws in any of the six identifications were Garcia's hesitancy at the lineup (which he later
20 explained) and both witnesses failure to describe certain minor, distinguishing features
   (primarily appellants missing bottom teeth).
21
22     Moreover, in *McDonald* the reliability of the eyewitness identification was undermined
   by a very strong alibi defense.  By comparison, appellant's alibi defense was weak.
23 Appellant testified he had been buying a car on the night of the robbery.  The only
   corroboration for his alibi was the testimony of Dion Jones, a lifelong friend.  On
24 cross-examination Jones admitted his uncertainty about the exact date of the car purchase.
   Appellant did not produce any documentary or physical evidence to support his alibi.
25 None of the other individuals either involved in the sale, or with whom appellant claimed
   he interacted that night appeared to testify.
26     Furthermore, the eyewitness identification here was substantially corroborated by
   evidence giving it independent reliability.  (*McDonald, supra*, 37 Cal.3d at p. 377.)
27
28     Eric Delk approached police and incriminated appellant independently of their
   investigation appellant was not considered a suspect at the time.  Delk's information

included appellant's boast about robbing the Beacon gas station and a description of appellant's gun which matched the eyewitnesses descriptions.

The proposed testimony of Charles would also have corroborated the eyewitness accounts. The People expected her, like Delk, to give a similar description of the revolver and also to testify she and appellant lived two blocks from the gas station. The close proximity of appellant's residence supported Garcia's statement the robber fled on foot.

Moreover, even if the trial court erred in excluding appellant's expert testimony, any error was harmless. (See *McDonald, supra*, 37 Cal.3d at p. 376 [trial courts exclusion of eyewitness expert is reviewed under the harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, and reversal is warranted only if a reviewing court finds it reasonably probable a result more favorable to defendant would have resulted absent the error].)  In addition, *McDonald* focused on the length of the jury's deliberations (inferring from 19 hours of deliberations three times longer than the argument phase that the jury found the case difficult to decide).  (*McDonald*, at p. 376, fn. 23.)

The exclusion of Dr. Shomer's testimony did not preclude appellant from arguing mistaken identity.  Defense counsel did so by impeaching the eyewitnesses on cross-examination.  She also made the reliability of eyewitness testimony a central theme of closing argument.  Although Dr. Shomer may have added gravitas or empirical data to the arguments, it is not reasonably probable a different result would have obtained.  The jury heard essentially the same arguments and still took under 45 minutes to return a guilty verdict.  Counsel also forcefully presented defendants alibi defense and reiterated it in closing.  The jury also found this unpersuasive.  We therefore conclude appellant was not prejudiced by the exclusion of Dr. Shomer's testimony.  It is not reasonably probable a result more favorable to defendant would have obtained had the testimony been allowed.

Ex. 6, attached Ex. A at 7–10.

Here, petitioner once again argues that the trial court's exclusion of expert witness testimony deprived him of his constitutional right to present a defense.  Petition at 6.

**B.    The State Court's Finding Was Not Unreasonable**

The decision to admit evidence of expert testimony on eyewitness identification is left to the broad discretion of the trial judge and "there is no federal authority for the proposition that such testimony *must* be admitted." *Jordan v. Ducharme*, 983 F.2d 933, 938-39 (9th Cir. 1993); *United States v. George*, 975 F.2d 1431, 1432 (9th Cir. 1992); *United States v. Langford*, 802 F.2d 1176, 1179 (9th Cir. 1986); *cf. United States v. Brewer*, 783 F.2d 841, 843 (9th Cir. 1986) (finding the trial court did not abuse its discretion when excluding proffered expert eyewitness testimony of Dr. Shomer that it deemed not "needed in the case" because the jury could determine from observing the witnesses and from hearing their testimony on direct and cross-examination whether or not the witnesses were accurate in their perceptions).

Here, the trial court excluded Dr. Shomer's testimony after it deemed the evidence

MPA In Support Of Answer - *Wills v. Sisto* - C 07-06003 TEH (PR)

1   unnecessary.  The trial court found that the jurors were able to determine whether the witness had

2   the capacity to make an identification based on the testimony at trial along with the jury instructions

3   given.  Petitioner was given ample opportunity to challenge Behl and Garcia's identification by

4   cross-examination and by trial counsel's comments during final argument.  Petitioner's counsel

5   spent considerable time, both during Garcia's cross-examination (RT at 115-30) and closing

6   argument (RT at 780-85), attacking the validity of Garcia's identification.  In particular, petitioner's

7   counsel requested that the jury pay close attention to the factors affecting eyewitness identification

8   enumerated in CALJIC No. 2.92 (Factors to Consider in Proving Identity by Eyewitness

9   Testimony).[2/]  (RT at 781.)  In light of the court's instruction with CALJIC No. 2.92 and the

10

---

11   2.  CALJIC No. 2.92, as given, provided:

12   Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the perpetrator of the crimes charged.  In determining

13   the weight to be given eyewitness identification testimony, you should consider the believability of the eyewitness as well as other factors which bear upon the accuracy

14   pf the witness' identification of the defendant, including, but not limited to, any of the following:

15   The opportunity of the witness to observe the alleged criminal act and the

16   perpetrator of the act;

17   The stress, if any, to which the witness was subjected at the time of the observation;

18   The witness' ability, following the observation, to provide a description of the perpetrator of the act;

19   The extent to which the defendant either fits or does not fit the description of the perpetrator of the act;

20   The witness' capacity to make an identification;

21   Evidence relating to the witness' ability to identify other alleged perpetrators of the criminal act;

22   Whether the witness was able to identify the alleged perpetrator in a photographic or physical line-up;

23   The period of time between the alleged criminal act and the witness' identification;

24   Whether the witness had prior contacts with the alleged perpetrator;

25   The extent to which the witness is either certain or uncertain of the identification;

26   Whether the witness' identification is in fact the product of her own recollection;

27   and;

28   Any other evidence relating to the witness' ability to make an identification.
CT at 263-64.

MPA In Support Of Answer - *Wills v. Sisto* - C 07-06003 TEH (PR)

1   argument and cross-examination by petitioner's counsel attacking the reliability of Behl and

2   Garcia's identification, the eyewitness identification testimony was not critical to petitioner's

3   defense and did not preclude argument attacking Behl and Garcia's identification.  Petitioner cannot

4   show that he was prejudiced by any alleged error since the exclusion of the expert testimony about

5   eyewitness identification was inconsequential.  Hence, petitioner's due process rights were not

6   violated.  The California Court of Appeal did not unreasonably apply Supreme Court precedent in

7   concluding that the court did not violate petitioner's due process rights by excluding the eyewitness

8   testimony.  Ex. 6, attached Ex. A, at 9–10.  The state court's factual determination should be upheld

9   as it was not unreasonable.  28 U.S.C. § 2254(d)(2).

10                                                    **II.**

11       **THE   STATE   COURT   REASONABLY   DETERMINED   THAT
         PETITIONER WAS NOT PREJUDICED BY THE ADMISSION OF
12       OFFICER JADALLAH'S LAY OPINION TESTIMONY**

13              Oakland Police Officer Jadallah, the robbery investigator, testified that he had observed

14   a connection between drug users and criminal activity.  Petitioner contends that this testimony

15   amounted to improper propensity evidence and that he received ineffective assistance of counsel

16   because his attorney failed to object the evidence on this ground.

17   **A.   State Court Proceedings**

18              In the prosecution's rebuttal case, the prosecutor recalled Oakland Police Officer Jadallah

19   to testify.  The prosecutor asked Officer Jadallah about his interview with petitioner after petitioner

20   had been identified as the robber at the physical lineup. At one point the following exchange took

21   place:

22              [Prosecutor]: Now, did you talk to [petitioner] about his drug use?

23              [Jadallah]: Yes.

24              [Prosecutor]: What did he say about his drug use?

25              [Jadallah]: He said that he smokes crack cocaine.

26              [Prosecutor]: Did he say he smoked as in past tense, or did he say currently
                smoked crack cocaine?
27
                [Jadallah]: It was current.
28

MPA In Support Of Answer - *Wills v. Sisto* - C 07-06003 TEH (PR)

1    [Prosecutor]: Did you ask him about any other drug or alcohol use?

2    [Jadallah]: He indicated that he drinks beer, but no hard alcohol.

3    [Prosecutor]: The fact that [petitioner] admitted to currently smoking crack cocaine, did it have any significance to you?

4    [Jadallah]: Yes, it did.

5    [Prosecutor]: What was that?

6
7    [Jadallah]: Typically, people with drug habits commit robberies to support their habit.

8    [Defense counsel]: Objection. Speculation.

9    THE COURT: You can lay a foundation for him stating the opinion, if you wish.

10
11    [Prosecutor]: Thank you. [] You were part of the robbery team, is that right, for the Oakland Police Department?

12    [Jadallah]: Yes.

13    [Prosecutor]: And youve been investigating robberies?

14    [Jadallah]: Yes.

15    [Prosecutor]: For how long?

16    [Jadallah]: A little over four years.

17    [Prosecutor]: You said the area that you are investigating the robberies in includes a portion of East Oakland; is that right?

18
19    [Jadallah]: Yes.

20    [Prosecutor]: And how many robberies would you say that you have investigated?

21    [Jadallah]: Hundreds.

22    [Prosecutor]: And in investigating these hundreds-or-so robberies, have you made a connection between drug use, and the people that have committed the robberies?

23

24    [Jadallah]: Yes.

25    [Prosecution]: And what is that connection?

26    [Jadallah]: That they have drug habits.

27    [Prosecutor]: Is that oftentimes or all the time?

28    [Jadallah]: Often.

MPA In Support Of Answer - *Wills v. Sisto* - C 07-06003 TEH (PR)

8

1
2

> [Prosecutor]: Not necessarily all the time?
>
> [Jadallah]: That's correct.

3
4

> [Prosecutor]: Did the fact that [petitioner] admitted to smoking crack cocaine have any significance to you in relation to the information you learned from Eric Delk?

5
6

> [Jadallah]: It was significant because it corroborated what Eric Delk had told officers.

7

RT 377–78.

8
9
10
11
12
13

At the conclusion of the case, petitioner's counsel argued against an expert witness jury instruction contending that Officer Jadallah did not qualify as an expert on this issue and the trial court agreed. RT 400–01. Rather than providing an instruction based on expert witness testimony, the court provided a jury instruction (CALJIC No. 2.81) regarding the opinion testimony of a lay witness pursuant to California Evidence Code section 800[3]. No further objections were made to Officer Jadallah's testimony.

14
15
16

Although no objections to the testimony were raised in the trial court, the appellate court determined that the testimony of Officer Jadallah was improper lay opinion under state law:

17
18
19
20
21
22
23
24

> Officer Jadallah's rebuttal testimony went beyond the permissible scope of lay opinion. The prosecution examined Officer Jadallah about his interview with appellant during the investigation of the robbery. Officer Jadallah's opinion about the correlation between drug use and robbery was not related to his perception of the interview, nor was it relevant to help the jury understand this particular robbery. Officer Jadallah's statements suggested appellant's admitted drug use made it more likely he committed the robbery. Rather than help the jury better understand his personal observations during the interview, Officer Jadallah's opinion merely bolstered the prosecutions arguments. The prosecution could have attempted to offer the testimony as expert opinion under Evidence Code section 801. Officer Jadallah's testimony related facts beyond common experience and his background investigating robberies fit the threshold requirements of expert opinion testimony. The court seemed to expect this approach when it invited counsel to lay a foundation for Officer Jadallah's testimony. However, the People never offered Officer Jadallah as an expert, at which time the court would have considered fully whether expert opinion was even admissible on the topic for which it was offered. Defense counsel did

25
26
27
28

3. California Evidence Code section 800 provides:
If a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is:
(a) Rationally based on the perception of the witness; and
(b) Helpful to a clear understanding of his testimony.

MPA In Support Of Answer - *Wills v. Sisto* - C 07-06003 TEH (PR)

1  not cross-examine Jadallah on his qualifications, object to any purported expertise or the
2  propriety of expert opinion, or renew its earlier objection.  Ultimately, during the
   discussion over jury instructions, the trial court correctly denied an expert witness jury
3  instruction with respect to this testimony.

4        However, although the appellate court found state law error in the admission of the

5  testimony being presented as lay opinion, the court also found that no prejudice resulted from the

6  admission:

7  The trial court erred by permitting Officer Jadallah's lay opinion.  However, the defense
   did not move to strike the testimony nor request an admonishment to the jury.  But any
8  error with respect to the testimony was harmless because it is not reasonably probable that
   a result more favorable to the appealing party would have been reached in the absence of
9  the error.  (*People v. Watson* (*supra*) 46 Cal.2d 818, 836.)

10 The two victims positively and confidently identified appellant as the robber and their
   testimony was corroborated by the statements of appellant's step-brother, Eric Delk.  The
11 swiftness of the jury's verdict again suggests little deliberation was required to convict.
   Consequently, we cannot say exclusion of the testimony would have been likely to render
12 a different verdict.

13 **B.    The Claim Is Procedurally Defaulted; However, Even If Cognizable, The State
         Court's Decision Was Neither Contrary To, Nor Involved, An Unreasonable**
14       **Application Of Clearly Established United States Supreme Court Authority**

15       Petitioner now contends that the testimony of Officer Jadallah should have been excluded

16 under California Evidence Code section 1101[4/] as improper evidence of a propensity for committing

17 crime.  Petition at 6.  First, petitioner failed to object on this ground at trial; thus the objection was

18 waived and this claim is procedurally defaulted.  Specifically, the appellate court found,

---

20    4.   Evidence Code section 1101 states:
21      (a) Except as provided in this section and in Sections 1102, 1103, 1108, and
   1109, evidence of a person's character or a trait of his or her character (whether in
22 the form of an opinion, evidence of reputation, or evidence of specific instances of
   his or her conduct) is inadmissible when offered to prove his or her conduct on a
23 specified occasion.
24      (b) Nothing in this section prohibits the admission of evidence that a person
   committed a crime, civil wrong, or other act when relevant to prove some fact (such
25 as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of
   mistake or accident, or whether a defendant in a prosecution for an unlawful sexual
26 act or attempted unlawful sexual act did not reasonably and in good faith believe that
   the victim consented) other than his or her disposition to commit such an act.
27      (c) Nothing in this section affects the admissibility of evidence offered to
   support or attack the credibility of a witness.
28

MPA In Support Of Answer - *Wills v. Sisto* - C 07-06003 TEH (PR)

> Appellant also objects Officer Jadallah's testimony constituted unduly prejudicial and/or improper propensity evidence under Evidence Code section 1101. However, appellant filed to raise this objection before the trial court and therefore it is waived on appeal. (*People v. Partida* (2005) 37 Cal.4th 428, 431.

Ex. 6, attached Ex. A at 13, fn. 5; see also 13 ["...the defense did not move to strike the testimony nor request an admonishment to the jury.")

For reasons of comity, the federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal ground and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). The Ninth Circuit has recognized that California's contemporaneous objection rule constitutes a valid state bar that precludes federal habeas review. *See Davis v. Woodford*, 384 F.3d 628, 654 (9th Cir. 2004) (failure to object based on constitutional grounds where only evidentiary objection was raised at trial); *Jackson v. Giurbino*, 364 F.3d 1002, 1006-007 (9th Cir. 2004) (failure to object to prosecutor's argument); *Rich v. Calderon*, 187 F.3d 1064, 1070 (9th Cir. 1999) (same). As petitioner has made no attempt to overcome the default by demonstrating cause and prejudice or a fundamental miscarriage of justice, *Coleman v. Thompson,* 501 U.S. at 750, this Court cannot reach the claim. Even if it could, no constitutional error occurred.

To demonstrate a claim of erroneous admission of evidence, petitioner must show that he was denied a fair trial. *See Estelle v. McGuire,* 502 U.S. at 67 (state court's evidentiary ruling does not violate due process unless evidence was so prejudicial as to render the trial unfair). As the appellate court reasonably found, the testimony presented as "lay opinion" by Officer Jadallah clearly did not render the trial unfair. The evidence of drug use was introduced during Delk's testimony by a statement Delk made to investigators that petitioner had a drug problem and was "always getting high." RT 212. When petitioner testified, he admitted that although he "messed around" with drugs, he did not "have a big thing of a [sic] dope." RT 332. Petitioner also admitted that when he was arrested, police officers found crack cocaine in the bedroom of the house where he was staying, but stated that the cocaine was not his. RT 336. In the rebuttal, Officer Jadallah testified that during his interview of petitioner immediately following the photo lineup, petitioner admitted to Officer Jadallah that he did smoke crack cocaine. RT 377. Thus, the statement from

1  Officer Jadallah was also proper to impeach petitioner's claim that he had only "messed around"

2  with drugs.

3      Moreover, the appellate court also rejected petitioner's alternative claim of ineffective

4  assistance of counsel because no prejudice resulted:

5      Whether or not the evidence was admissible as propensity evidence, no prejudice can be
       ascribed to the failure to object.  As set forth above, appellant fails to demonstrate a
6      reasonable probability that Officer Jadallah's opinion testimony affected the verdict.

7  Ex.6, attached Ex. A at 13, fn. 5.

8      The ineffective assistance of counsel claim cannot overcome the default, because the

9  appellate court reasonably found that petitioner could not establish prejudice.  Further, in order to

10  establish that counsel was ineffective, petitioner bears the burden of showing that counsel's

11  performance fell below an objective standard of reasonableness under prevailing professional norms,

12  and that there is a reasonable probability the result of the proceeding would have been different.

13  *Strickland v. Washington*, 466 U.S. 668, 687-88, 695-96 (1984).  A "reasonable probability" is "a

14  probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  In order to prevail,

15  petitioner must "affirmatively prove prejudice."  *Id*. at 693.  The reviewing court need not assess

16  counsel's performance where it is clear that petitioner cannot show the requisite prejudice.  *Id*. at

17  697; *Williams v. Calderon,* 52 F.3d 1465, 1470 n. 3 (9th Cir. 1995).

18      Moreover, petitioner "must do more than show that he would have satisfied *Strickland's*

19  test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not

20  enough to convince a federal habeas court that, in its independent judgment, the state-court decision

21  applied *Strickland* incorrectly."  *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  Rather, petitioner must

22  show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable

23  manner.  *Id*.  Thus, federal habeas review of a claim of ineffective assistance is "doubly deferential."

24  *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

25      Here, as discussed by the prosecutor in his closing argument, a significance of Officer

26  Jadallah's connection between smoking crack cocaine and the robbery was not that, because of a

27  drug dependency, petitioner was therefore predisposed to commit robbery.  Rather, this evidence,

28  together with petitioner's admitted need for rent money on February 3, 2005  (RT 330, 347), served

MPA In Support Of Answer - *Wills v. Sisto* - C 07-06003 TEH (PR)

1  as evidence of a motive for him to have committed the robbery at the gas station. RT 440–41. This

2  is a proper application of the evidence under California Evidence Code sections 1101 (a) and (b).

3  Defense counsel thus reasonably could have concluded that an objection would have been futile.

4      Further, as the state court found, there was other significant evidence of petitioner's guilt.

5  Petitioner's stepbrother provided the initial information to police officers that petitioner was the

6  suspect in the robbery, and restated the information to investigators as recently as one week before

7  trial. RT 186, 188–89, 191–92, 209–12, 237. Upon receipt of Delk's statement, the robbery

8  investigator promptly conducted an independent lineup to corroborate the information that had been

9  received. RT 241–42, 244, 248. Each of the victims of the robbery independently and positively

10  identified petitioner, whom they also recognized as a previous customer, as the person who

11  committed the robbery.

12      Accordingly, under the double deference standard, petitioner cannot show that the state

13  court's decision finding no prejudice based on the admission of Officer Jadallah's testimony with

14  respect to a connection between criminal activity and drug use was objectively unreasonable. *See*

15  *Woodford v. Visciotti,* 537 U.S. at 26-27 (state court's conclusion that petitioner had not established

16  prejudice under *Strickland* was not unreasonable).

17                                     **III.**

18            **THERE WAS NO CUMULATIVE PREJUDICIAL ERROR**

19      Petitioner claims that he was deprived of due process and a fair trial as a result of the

20  cumulative effect of the errors previously raised in his petition. Petition at 7. Petitioner raised this

21  claim in the appellate court and the claim was rejected as follows:

22      Appellant asserts the errors here were cumulatively prejudicial. However, because we
        have determined there was no error, this contention fails.
23

24  Ex. 6, attached Ex. A at 13, fn. 7.

25      Because there was no prejudicial federal constitutional error with respect to any of

26  Petitioner's individual claims, there is no cumulative prejudicial federal constitutional error. *See*

27  *e.g., Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997); *Hamilton v. Vasquez*, 17 F.3d 1149,

28  1155 (9th Cir. 1994); *see also Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (no federal rights

1    violation so no basis to grant writ for cumulative error); *Cooey v. Anderson*, 988 F. Supp. 1066,

2    1095-96 (N.D. Ohio 1997) (citing *Derden v. McNeel*, 978 F.2d 1453, 1458 ( 5th Cir. 1992) (en banc)

3    (cumulative error does not consider non-constitutional error nor defaulted claims).)

4         In sum, petitioner's cumulative error claim is not cognizable and it fails in any event

5    because of the state appellate court's reasonable decision that no cumulative error occurred.

6

**CONCLUSION**

7

8         Accordingly, respondent respectfully requests that the petition for writ of habeas corpus

be denied.

9

10        Dated:  June 26, 2008

11                          Respectfully submitted,

12                          EDMUND G. BROWN JR.
Attorney General of the State of California

13                          DANE R. GILLETTE
Chief Assistant Attorney General

14                          GERALD A. ENGLER
Senior Assistant Attorney General

15                          GREGORY A. OTT
Deputy Attorney General

16

17

18                          /s/  Sara Turner
SARA TURNER

19                          Deputy Attorney General

20                          Attorneys for Respondent

21    20118673.wpd
SF2008401153

22

23

24

25

26

27

28

MPA In Support Of Answer - *Wills v. Sisto* - C 07-06003 TEH (PR)

14