United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEASLEY WILLS,

Petitioner,

v.

D.K. SISTO, Warden,

Respondent.

_______________________________/

No. C 07-6003 TEH (PR)

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Pro se Petitioner Beasley Wills seeks a writ of habeas corpus under 28 U.S.C. section 2254, which, for the reasons that follow, the Court denies.

I

On April 28, 2005, an information filed in Alameda County superior court charged Petitioner with two counts of second degree robbery in violation of California Penal Code section 211 and possession of a firearm by a felon in violation of California Penal Code section 12021(a)(1). Attached to the robbery charge was an allegation that Petitioner had personally used a firearm in

United States District Court
For the Northern District of California

violation of California Penal Code sections 12022.5(a)(1) and 12022.53(b). The information also alleged that Petitioner had suffered three prior felony convictions. Doc. #10-2, Ex. 1 at 67-70.

On August 15, 2005, a jury found Petitioner guilty on all counts and found true the firearm allegation. Doc. #10-2, Ex. 1 at 172-74.

On October 13, 2005, the trial court sentenced Petitioner to thirteen years in prison, consisting of three years for each robbery, to be served concurrently, and ten years for the firearm enhancement. The court also sentenced Petitioner to two years in prison for possession of a firearm by a felon, to be served concurrently. Doc. #10-2, Ex. 1 at 175-77.

On March 20, 2007, the California court of appeal affirmed the judgment. Doc. #10-2, Ex. 6 (Ex. A).

On June 20, 2007, the Supreme Court of California denied review. Doc. #10-2, Ex. 7.

On November 28, 2007, Petitioner filed the instant federal Petition for Writ of Habeas Corpus under 28 U.S.C. section 2254. Doc. #1. On March 27, 2008, this Court found that the Petition stated cognizable claims for relief and ordered Respondent to show cause why a writ of habeas corpus should not be granted. Doc. #6. Respondent has filed an Answer and Petitioner has filed a Traverse. Doc. ## 10, 13.

II

The California court of appeal summarized the factual background of the case as follows:

At around 7:50 p.m. on February 3, 2005, an armed robber entered the Beacon gas station at Foothill and Havenscourt Boulevards in East Oakland.  Two employees of the gas station, Vijay Behl and Lucio Garcia, were on duty at the time.  Garcia was behind the cash register, Behl was standing on the customer side of the counter speaking on his cell phone.  No other customers or employees were present.

The robber approached the counter and drew a large revolver from his waistband.  He aimed the revolver at Behl's chest, threatened to kill him, and demanded money.  Garcia produced some money from the cash register and placed it on the counter.  The robber repeated his demand for money and continued throughout to threaten Behl.  Garcia removed the cash tray from the register and placed it on the counter.  The robber filled his pockets with all the cash from the tray, backed out of the gas station and fled.  The gas station lost $400-$500 in the robbery.

After the robber left, Garcia and Behl summoned Oakland Police by activating the gas station's security alarm.  Behl also described the robbery and the suspect to a 911 operator.  Four security cameras recorded the crime but the poor quality of the tape precluded any meaningful depiction of the perpetrator.  The robber also concealed himself from the cameras by his clothing and by walking backwards out of the gas station.

On March 3, 2005, appellant's step-brother, Eric Delk, told police appellant robbed the Beacon gas station on February 3.  Delk was in custody on vehicle theft charges at the time, and appellant was also in custody on an unrelated charge.  The investigating officers arranged an identification lineup to corroborate Delk's information with the two eyewitnesses.

Behl and Garcia attended a lineup on March 9, at the Oakland police station.  The lineup included appellant and five "fillers" chosen by appellant from fellow inmates in accordance with standard lineup procedures.  At the lineup appellant and the fillers each donned a black knit beanie, stepped forward and said:  "Give me the money." After the lineup, Behl unequivocally identified appellant as the robber.  Garcia tentatively identified appellant, but indicated his uncertainty by marking his lineup card with a question mark.  On March 25, 2005, police

> formally charged appellant with robbing the Beacon gas station.

Doc. #10-2, Ex. 6 (Ex. A) at 1-2.

III

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a writ of habeas corpus on any claim adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Contrary to" requires a finding that the state court's conclusion of law is opposite Supreme Court precedent or that the state court's decision differs from Supreme Court precedent on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court "unreasonably appli[es]" federal law if it identifies the correct governing legal principle from Supreme Court precedent, "but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. section 2254(d) is in the holdings, as opposed to the dicta, of the Supreme Court as of the time of the state court

decision. Williams, 529 U.S. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003), cert. denied, 540 U.S. 968 (2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Clark, 331 F.3d at 1069.

Finally, AEDPA requires a district court to presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

IV

Petitioner seeks habeas relief under 28 U.S.C. section 2254 based on four claims: (1) he was denied his right to a fair trial by the trial court's exclusion of his expert witness evidence on the unreliability of eyewitness testimony; (2) he was denied his right to a fair trial by the trial court's admission of opinion testimony regarding the propensity of drug users to commit robberies; (3) he was denied his Sixth Amendment right to effective assistance of counsel due to defense counsel's failure to object to the admission of such propensity evidence; (4) the cumulative impact of the errors in the case mandates reversal.

A

Petitioner claims the trial court erred by excluding defense expert witness evidence on the unreliability of eyewitness testimony because this exclusion impaired his right to "present a

United States District Court
For the Northern District of California

complete defense." California v. Trombetta, 467 U.S. 479, 485 (1984). Specifically, Petitioner claims he was deprived of his Sixth Amendment rights to confront the witnesses against him and to have compulsory process for obtaining witnesses in his favor, and of his Fourteenth Amendment right to due process.

1

The California court of appeal provided the following background for this particular claim:

> [Vijay Behl and Lucio Garcia were the attendants working at the Beacon station on the night of the robbery; Behl called 911 to report the crime.]
>
> Behl told the 911 operator the robber had a dark complexion, a mustache and beard, was aged between 40 and 45, and wore jeans, a blue jacket with a hood and a black beanie hat. Behl also told the 911 operator he recognized the robber as a regular customer. Behl later gave the same description to police at the scene of the robbery. He went on to positively identify appellant as the robber at the police lineup; the preliminary hearing; and at trial; adding that appellant had bought beer at the gas station on the very afternoon of the robbery. In each case, Behl's identification was unhesitant and unequivocal. On cross-examination, however, Behl stated he had not mentioned either appellant's facial scar or missing bottom teeth in his prior statements.
>
> In his statement to police, Garcia described the robber as an African-American male, aged 40 to 45 years old, who was unshaven, had a dark complexion, stood between six feet and six feet two and weighed approximately 200 pounds. Garcia stated the robber wore blue jeans, a dark jacket and dark beanie. Garcia positively identified appellant as the robber at the preliminary hearing and trial. He testified he had indeed recognized appellant as the robber at the lineup, but hesitated to identify him out of fear of retribution and of having to testify. Garcia also testified that, upon reflection, he too remembered appellant as a regular customer

United States District Court
For the Northern District of California

of the gas station.  Like Behl, Garcia mentioned neither a facial scar nor missing teeth in any of his descriptions of appellant.

[At trial,] [t]he prosecution called Eric Delk as its first corroboration witness.  Delk, however, recanted his earlier statements to police and prosecutors about appellant being the robber.  Delk testified he lied to police about appellant's involvement in the robbery.  He said he lied in order to get out of jail and because he was angry at appellant for sleeping with his (Delk's) girlfriend.

The prosecution impeached Delk with his prior inconsistent statements.  The People also called John Paul Williams, a police officer with the district attorney's office, and Allen Boyd, a security deputy at the Wiley Manuel Courthouse in Oakland.  Williams testified to the statement he took from Delk, incriminating appellant.  Boyd testified he overheard Delk's statement to Williams from his post outside the interview room.  Both witnesses related essentially the same statement from Delk.  Both witnesses also affirmed neither the district attorney nor Williams made Delk an offer of leniency or any other incentive in exchange for his statement.

The People also listed Sherrill Charles as a corroboration witness.  Charles and appellant had a romantic relationship and lived together.  The prosecution expected Charles to testify as follows:  she had seen appellant with a handgun similar to the one used in the gas station robbery, he lived within walking distance of the gas station, he smoked crack cocaine, and he had money for household expenses despite his unemployment.  The district attorney subpoenaed Charles, but she failed to appear at trial. The court subsequently issued a bench warrant for her.

Appellant asserted an alibi defense.  Appellant's longtime friend, Manfred "Dion" Jones, testified he and appellant purchased a car together on February 3, 2005 - the night of the robbery.  No paperwork accompanied the sale of the car.  On cross-examination Jones admitted he was uncertain about the exact date of the transaction.  Appellant also testified he and Jones met with appellant's nephew to purchase a car on February 3.

> CALJIC No. 2.92 was included in the jury instructions at the request of both parties. The court thereby instructed jurors to consider eyewitness testimony in light of a number of factors bearing on its accuracy, including opportunity to observe; the effects of stress; ability to describe; the cross-racial nature of identification; capacity to identify; whether identification was made in a photo or physical lineup; and any prior contacts with the alleged perpetrator. Both the prosecution and defense addressed the factors of CALJIC No. 2.92 in detail during closing arguments.
>
> . . . .
>
> Before the trial the People moved to exclude the testimony of defense witness Dr. Robert Shomer under Evidence Code section 352. Dr. Shomer is an expert in eyewitness identification. In their offer of proof, the defense stated Dr. Shomer would testify to the potential unreliability of eyewitness identifications. Specifically, he would address the impact of emotional stress on eyewitness perception and recollection, as well as problems with interracial identifications.
>
> The court granted the People's motion to exclude Dr. Shomer's testimony. The court ruled as follows: "Well, I have reviewed People versus McDonald, which is the Seminole [sic] case, and I do find that there is much more evidence bearing on the identification in this case than was true in McDonald. . . . [¶] In this case, there is both the factors of the positive identification at least by one individual, and there is corroborating evidence of whatever weight from both Mr. Delk and the other individual, [appellant's girlfriend, Sherrill Charles] . . . describing a firearm. Therefore, it is my ruling that giving effect to the provisions of Evidence Code [section] 352, that there is no need for expert testimony in this particular case. Given that, the jury can be adequately instructed about it, and it will be their ultimate decision and effective argument can be made to the weight of the corroborating evidence."
>
> Trial began on August 8, 2005. After Behl and Garcia testified, defense counsel moved for reconsideration of the court's earlier ruling excluding Dr. Shomer's testimony. Counsel emphasized appellant's alibi defense, as well as

> possible deficiencies in the corroboration testimony of Delk and Charles. The trial court again concluded expert testimony was not required because "there is . . . substantial corroboration of the [eyewitness] evidence giving it independent reliability."

Doc. #10-2, Ex. 6 (Ex. A) at 3-6.

The court of appeal found that the trial court's exclusion of petitioner's proposed evidence was not error. Doc. #10-2, Ex. 6 (Ex. A) at 9. The court reasoned:

> In contrast to the contradictory and uncertain testimony from multiple eyewitnesses seen in McDonald, the eyewitness testimony from the two victims here was focused, consistent and assured. Both witnesses observed the robber in close proximity and in a well-lit environment. Both observed their assailant for at least 30 seconds. Both positively identified appellant at the police line up, the preliminary hearing and at trial. The only flaws in any of the six identifications were Garcia's hesitancy at the lineup (which he later explained) and both witnesses' failure to describe certain minor, distinguishing features (primarily appellant's missing bottom teeth).
>
> Moreover, in McDonald the reliability of the eyewitness identification was undermined by a very strong alibi defense. By comparison, appellant's alibi defense was weak. Appellant testified he had been buying a car on the night of the robbery. The only corroboration for his alibi was the testimony of Dion Jones, a lifelong friend. On cross-examination Jones admitted his uncertainty about the exact date of the car purchase. Appellant did not produce any documentary or physical evidence to support his alibi. None of the other individuals either involved in the sale, or with whom appellant claimed he interacted that night appeared to testify.[1]
>
> **Furthermore, the eyewitness identification here was "substantially corroborated by evidence giving it independent reliability." (McDonald,**

---

[1] Appellant admitted his alibi was false at the sentencing hearing.

United States District Court
For the Northern District of California

> supra, 37 Cal.3d at p. 377.) Eric Delk approached police and incriminated appellant independently of their investigation - appellant was not considered a suspect at the time. Delk's information included appellant's boast about robbing the Beacon gas station and a description of appellant's gun which matched the eyewitnesses' descriptions.
>
> The proposed testimony of Charles would also have corroborated the eyewitness accounts. The People expected her, like Delk, to give a similar description of the revolver and also to testify she and appellant lived two blocks from the gas station. The close proximity of appellant's residence supported Garcia's statement the robber fled on foot.[[2]]

Doc. #10-2, Ex. 6 (Ex. A) at 7-8.

The court of appeal also held that even if the trial court's exclusion of Petitioner's proposed evidence was error, it was harmless. Doc. #10-2, Ex. 6 (Ex. A) at 9. Under California law, reversal is warranted only if it is "reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." People v. Watson, 46 Cal.2d 818, 836 (1956). The court of appeal observed that defense counsel emphasized the problems of eyewitness testimony in her closing argument and attempted to impeach the eyewitnesses on cross-examination. Doc. #10-2, Ex. 6 (Ex. A) at 9. The court of appeal concluded that "the exclusion of Dr. Shomer's testimony did not preclude appellant from arguing mistaken identity." Id.

---

[2] Despite Delk's recantation at trial, his statements to police were, in turn, corroborated by the testimony of Inspector Williams and Deputy Boyd. Nor is the trial court's ruling regarding corroboration affected by Charles' failure to appear. (See People v. Welch (1999) 20 Cal.4th 701, 739. ["We review the correctness of the trial court's ruling at the time it was made ... and not by reference to [the state of the] evidence ... at a later date"].)

United States District Court
For the Northern District of California

2

"[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." United States v. Scheffer, 523 U.S. 303, 308 (1998). This latitude is limited by a defendant's right under the Sixth and Fourteenth Amendments to "present a complete defense." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quoting Trombetta, 467 U.S. at 485). "This right is abridged by evidence rules that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." Id. (quotations and citation omitted). Further, the right to due process does not give a defendant an absolute right to present any and all relevant evidence. Montana v. Egelhoff, 518 U.S. 37, 42 (1996). Rather, under the Constitution, judges may "exclude evidence that is repetitive . . ., only marginally relevant or poses an undue risk of harassment, prejudice, [or] confusion of the issues." Crane v. Kentucky, 476 U.S. 683, 689-90 (1986) (quotations and citation omitted).

Failure to comply with state rules of evidence is neither a necessary nor a sufficient basis for granting federal habeas relief on due process grounds. Henry v. Kernan, 197 F.3d 1021, 1031 (9th Cir. 1999). To obtain habeas relief on the basis of an evidentiary error, a petitioner must show that the error "violated fundamental due process and the right to a fair trial." Id. The petitioner also must demonstrate that the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). If a state court determines under an appropriate standard of review that the error

was harmless, the federal court must accept this determination unless it is objectively unreasonable. Medina v. Hornung, 386 F.3d 872, 878 (9th Cir. 2004).

3

Here, even though the trial court excluded the evidence Petitioner sought to introduce to challenge the eyewitness testimony, the exclusion of this evidence did not amount to a denial of Petitioner's right under the Sixth and Fourteenth Amendments to present a defense. See Scheffer, 523 U.S. at 308. Although Petitioner was precluded from presenting testimony from Dr. Shomer regarding the reliability of eyewitness identifications, he nonetheless was able to challenge and test the testimony of the eyewitnesses who identified him as the robber.

First, his counsel was allowed to fully cross-examine the eyewitnesses for the purpose of impeaching their testimony. See Doc. #10-2, Ex. 2, Vol. 1 at 70-100, 104-05, 108-09 [cross-examination of gas station attendant Vijay Behl]; Doc. #10-2, Ex. 2., Vol. 1 at 146-56; Doc. #10-2, Ex. 2., Vol. 2 at 171-78, 183-85 [cross-examination of gas station attendant Lucio Garcia]. Second, Petitioner presented an alibi defense indicating he was in another place at the time of the robbery, and therefore the eyewitnesses who identified him were simply mistaken. See Doc. #10-2. Ex. 2, Vol. 2 at 322-33. Third, the jurors were instructed with CALJIC No. 2.92, which advises them to consider the following factors in determining the accuracy of eyewitness identifications:

> The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act;

United States District Court
For the Northern District of California

> The stress, if any, to which the witness was subjected at the time of the observation;
>
> The witness' ability, following the observation, to provide a description of the perpetrator of the act;
>
> The extent to which the defendant either fits or does not fit the description of the perpetrator of the act;
>
> The witness' capacity to make an identification;
>
> Evidence relating to the witness' ability to identify other alleged perpetrators of the criminal act;
>
> Whether the witness was able to identify the alleged perpetrator in a photographic or physical line-up;
>
> The period of time between the alleged criminal act and the witness' identification;
>
> Whether the witness had prior contacts with the alleged perpetrator;
>
> The extent to which the witness is either certain or uncertain of the identification;
>
> Whether the witness' identification is in fact the product of her own recollection; and
>
> Any other evidence relating to the witness' ability to make an identification.

Doc. #10-2, Ex. 1 at 128-29.

Finally, in her closing argument, Petitioner's counsel reinforced the defense theory of mistaken identity due to the unreliability of eyewitness testimony. She spoke at length about the various factors that could have caused the eyewitnesses to make a mistaken identification, including stress and the cross-racial nature of the identification. Doc. #10-2, Ex. 2, Vol. 2 at 443-64. Although Dr. Shomer's testimony would have demonstrated that these particular factors, among others, produce less reliable eyewitness identifications, Doc. #10-2, Ex. 2, Vol. 1 at 18-19 & 158-60, the trial court found that under the circumstances, the jurors were able to determine the reliability of the eyewitness identifications based on the trial testimony and the jury instructions, and therefore the expert testimony was unnecessary. Doc. #10-2, Ex.2, Vol. 1 at 22-23

& 162-63. On this record, the Court cannot say the state appellate court's decision upholding the trial court's exclusion of petitioner's proposed evidence was contrary to, or involved an unreasonable application of, clearly established federal law. See 28 USC § 2254(d).

Even if the exclusion of this evidence was error, the California court of appeal found that it was harmless. Doc. #10-2, Ex. 6 (Ex. A) at 10. For the reason that follow, the Court cannot say that the state appellate court's determination of harmless error was objectively unreasonable. See Medina, 386 F.3d at 878 (applying 28 U.S.C. § 2254(d)).

As described earlier, Petitioner was able to fully argue the theory of mistaken identity without Dr. Shomer's testimony. Petitioner nonetheless claims the exclusion of Dr. Shomer's testimony left him completely unable to counter the prosecutor's inaccurate and prejudicial statements concerning the accuracy of eyewitness testimony. But this claim is unconvincing. The record shows that in addition to hearing counsel's theory of mistaken identity, the jurors heard through instruction the limitations of eyewitness testimony. Doc. #10-2, Ex. 2 at 443-64; Doc. #10-2, Ex. 1 at 128-29. As the California court of appeal noted, "[t]he jury heard essentially the same arguments [that Dr. Shomer would have presented] and still took under 45 minutes to return a guilty verdict." Doc. #10-2, Ex. 6 (Ex. A) at 9. Based on these facts, this Court cannot say that the state appellate court's determination of harmless error was objectively unreasonable. See Medina, 386 F.3d at 878 (applying 28 U.S.C. § 2254(d)).

B

Petitioner next claims he was denied his right to a fair trial because the trial court admitted improper opinion testimony regarding the propensity of drug users to commit robberies.

1

The California court of appeal provided the following background for this particular claim:

> The prosecutor asked Officer Jadallah about his interview with appellant after appellant had been identified as the robber at the physical lineup. At one point the following exchange took place:
>
> "[Prosecutor]: Now, did you talk to [appellant] about his drug use?
>
> "[Jadallah]: Yes.
>
> "[Prosecutor]: What did he say about his drug use?
>
> "[Jadallah]: He said that he smokes crack cocaine.
>
> "[Prosecutor]: Did he say he smoked as in past tense, or did he say currently smoked crack cocaine?
>
> "[Jadallah]: In-it was current.
>
> "[Prosecutor]: Did you ask him about any other drug or alcohol use?
>
> "[Jadallah]: He indicated that he drinks beer, but no hard alcohol.
>
> "[Prosecutor]: The fact that [appellant] admitted to currently smoking crack cocaine, did it have any significance to you?
>
> "[Jadallah]: Yes, it did.
>
> "[Prosecutor]: What was that?
>
> "[Jadallah]: Typically, people with drug habits commit robberies to support their habit.

United States District Court
For the Northern District of California

"[Defense counsel]: Objection. Speculation.

"THE COURT: You can lay a foundation for him stating the opinion, if you wish.

"[Prosecutor]: Thank you. [¶] You were part of the robbery team, is that right, for the Oakland Police Department?

"[Jadallah]: Yes.

"[Prosecutor]: And you've been investigating robberies?

"[Jadallah]: Yes.

"[Prosecutor]: For how long?

"[Jadallah]: A little over four years.

"[Prosecutor]: You said the area that you are investigating the robberies in includes a portion of East Oakland; is that right?

"[Jadallah]: Yes.

"[Prosecutor]: And how many robberies would you say that you have investigated?

"[Jadallah]: Hundreds.

"[Prosecutor]: And in investigating these hundreds-or-so robberies, have you made a connection between drug use, and the people that have committed the robberies?

"[Jadallah]: Yes.

"[Prosecution]: And what is that connection?

"[Jadallah]: That they have drug habits.

"[Prosecutor]: Is that oftentimes or all the time?

"[Jadallah]: Often.

"[Prosecutor]: Not necessarily all the time?

"[Jadallah]: That's correct.

"[Prosecutor]: Did the fact that Mr. Wills admitted to smoking crack cocaine have any significance to you in relation to the information you learned from Eric Delk?

United States District Court
For the Northern District of California

> "[Jadallah]: It was significant because it corroborated what Eric Delk had told officers."

Doc. #10-2, Ex. 6 (Ex. A) at 10-11.

The court of appeal found that this testimony "went beyond the permissible scope of lay opinion" and therefore its admission was error. Doc. #10-2, Ex. 6 (Ex. A) at 12-13. Although "Evidence Code section 800 allows opinion testimony by lay witnesses when rationally based on the perception of the witness and helpful to a clear understanding of his or her testimony," the court held that the opinions expressed by Officer Jadallah had no relation to the subject of his legitimate testimony. Id. at 12. The prosecution could have attempted to admit Officer Jadallah's observations on the criminal propensity of drug users as expert opinion, but it did not attempt to do so. Id. at 12-13. Its admission, therefore, was error. Id.

The court of appeal also determined, however, that the error in admitting the testimony was harmless because it is not "reasonably probable that a result more favorable to [Petitioner] would have been reached in the absence of the error." Doc. #10-2, Ex. 6 (Ex. A) at 13 (quoting Watson, 46 Cal.2d at 836). The court reasoned:

> The two victims positively and confidently identified appellant as the robber and their testimony was corroborated by the statements of appellant's step-brother, Eric Delk. The swiftness of the jury's verdict [after 45 minutes of deliberation] again suggests little deliberation was required to convict. Consequently, we cannot say exclusion of the testimony would have been likely to render a different verdict.

Doc. #10-2, Ex. 6 (Ex. A) at 13 (footnote omitted).

United States District Court
For the Northern District of California

The court of appeal refused to consider Petitioner's claim that Officer Jadallah's testimony also constituted "unduly prejudicial and/or improper propensity evidence under Evidence Code section 1101" because defense counsel had failed to raise this objection at trial and therefore waived it on appeal. Doc. #10-2, Ex. 6 (Ex. A) at 13 n.5.

2

The United States Supreme Court has expressly left open the question of whether admission of propensity evidence violates due process. Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991). Therefore, the admission of propensity evidence does not violate any due process right under clearly established federal law, as required by AEDPA. Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006), cert. denied, 549 U.S. 1287 (2007). Additionally, admission of such evidence is not "an unreasonable application of due process principles." Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008), cert. denied, __ U.S. __, 129 S.Ct. 941, 173 L.Ed.2d 141 (2009). Because the admission of the evidence in question was not contrary to clearly established federal law, it cannot serve as the basis for habeas relief. See Alberni, 458 F.3d at 866-67.

And even if the admission of the propensity evidence at issue was constitutional error, the California court of appeal found that it was harmless. Doc. #10-2, Ex. 6 (Ex. A) at 13. For the reason that follow, the Court cannot say that the state appellate court's determination of harmless error was objectively unreasonable. See Medina, 386 F.3d at 878 (applying 28 U.S.C. § 2254(d)).

Here, Petitioner's guilty verdict is supported by a wealth of evidence. As the court of appeal noted, two eyewitnesses repeatedly identified Petitioner as the robber, and Petitioner's step-brother spontaneously informed the police that Petitioner admitted robbing the gas station attendants to him. Doc. #10-2, Ex. 6 (Ex. A) at 4-5. Additionally, Petitioner lived one block away from the gas station and had been seen with a handgun similar to the one used in the robbery. Id. Further, Petitioner's defense was primarily based on an alibi, supported only by his own testimony and that of his lifelong friend. Id. at 5-6. Given the weight of the evidence against Petitioner and that the jury took only forty-five minutes to return a verdict of guilty on all counts, this Court cannot say that the state appellate court's determination of harmless error with respect to the admission of propensity evidence was objectively unreasonable. See Medina, 386 F.3d at 878 (applying 28 U.S.C. § 2254(d)).

C

Petitioner next claims that he was denied his Sixth Amendment right to effective assistance of counsel because trial counsel failed to object to Officer Jadallah's testimony on the grounds that it was improper propensity evidence.

1

The California court of appeal rejected Petitioner's claim that trial counsel's failure to object on propensity grounds constituted ineffective assistance. Doc. #10-2, Ex. 6 (Ex. A) at 13 n.5. The court explained: "Whether or not the evidence was

United States District Court
For the Northern District of California

admissible as propensity evidence, no prejudice can be ascribed to the failure to object. . . . [A]ppellant fails to demonstrate a reasonable probability that Officer Jadallah's opinion testimony affected the verdict." Id.

2

To prevail on a claim of ineffective assistance of counsel claim, Petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Strickland, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

3

The California court of appeal's rejection of petitioner's ineffective assistance of counsel claim was not an objectively unreasonable application of Strickland. See 28 U.S.C. 2254(d). As

United States District Court

For the Northern District of California

discussed earlier, the admission of Officer Jadallah's testimony regarding the propensity of drug users to commit robberies was not prejudicial.  It therefore cannot be said that there is a reasonable probability that had counsel objected to the admission of the testimony as improper propensity evidence, "the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Petitioner is not entitled to federal habeas relief on his ineffective assistance of counsel claim.

D

Petitioner's final claim is that the cumulative impact of the errors in his trial was prejudicial and therefore mandates reversal.

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003) (reversing conviction where multiple constitutional errors hindered defendant's efforts to challenge every important element of proof offered by prosecution).  Where no single constitutional error exists, however, nothing can accumulate to the level of a constitutional violation.  See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002); Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999); Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996).

Because this Court has determined that there was no single constitutional error, there can be no cumulative prejudicial impact.  See Mancuso, 292 F.3d at 957; Fuller, 182 F.3d at 704; Rupe, 93 F.3d

United States District Court
For the Northern District of California

at 1445. Petitioner is not entitled to federal habeas relief on his cumulative prejudice claim.

V

For the foregoing reasons, the Petition for a writ of habeas corpus is DENIED.

The Clerk shall enter Judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: 07/09/09

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\HC.07\Wills-07-6003-petition denied.wpd